May it please the Court, my name is Kevin Crabtree and I represent the petitioner, Duc Vo. The petitioner is a returning refugee who initially fled Vietnam because of his family's assistance to the Americans during the war, and today he has been unlawfully found to be inadmissible to the United States. The finding was not supported by substantial evidence. Even if it was, he was unfairly denied the opportunity for parole under the returning refugee rule, and finally, the agency's decision respecting relief was not supported by substantial evidence. The only issue before the Court is the finding of admissibility was that he was a principal trafficker, not knowing any better. And in order to sustain that charge, the agency had to find that his conduct was a dictionary definition of trafficking, which the Supreme Court has held requires a commercial element, or was a felony under the Controlled Substances Act, which is relevant here, would include the possession, simple possession of five grams of crack cocaine or more. The agency made no specific finding regarding the weight of the substance, and there was no evidence at all in the record regarding that. The IJ and the BIA made, excuse me, yes? No, I just want you to take a breath. Okay. Slow down. I'm getting a little fast, sorry. Go ahead. So the IJ and the BIA made no express finding regarding whether he had a commercial purpose in transporting a controlled substance. The IJ expressly found this irrelevant. That's at page 258 and 259 of the record. The BIA arguably made some factual findings that were probative of this issue, including the presence of business cards, a pager, and large amount of cash. None of those findings were made by the IJ. Those violated the regulations of the agency. They were appellate findings of fact. But, again, it didn't reach the ultimate issue of whether there was a commercial purpose in transporting the controlled substance. The record contained the petitioner's testimony, the fact of conviction, and the police report. The police report should not have come in under a synapian v. Holder. He was denied the opportunity to cross-examine the officer. He made that request in writing. It was acknowledged but ignored by the IJ. That is at page, it was in the motion, page 356, excuse me. He was prejudiced because this was the primary evidence against him, his alleged out-of-court statements made to the arresting police officer. He asserted that he is limited, he was proficient, and there may have been misunderstandings between what he was saying and what was recorded in that report. The fact of conviction was insufficient under Rivera-Sanchez to constitute a concession of a commercial purpose. The court held in that case that California transportation convictions can be supported for transportation for personal use or even where the defendant would not be guilty of possession because of a lack of knowledge of the nature of the substance being transported. The petitioner's testimony was the only evidence remaining. They rejected the credibility of the petitioner based on impermissible speculation and conjecture and misapprehensions of the record. A good example is the IJ found that he was not credible because he denied knowing that drugs were illegal. This is simply a mischaracterization of his testimony. On redirect, he explained that, quote, I knew that I was going wrong, but I did not know what was in the box that was illegal. He did not know what kind of drugs he was transporting in these containers inside of a cigarette box. That's page 305, line 9. The petitioner was questioned as to credibility by the IJ because he didn't take responsibility for trafficking. He consistently accepted responsibility for transporting a controlled substance while denying that he intended to sell it. And a denial of responsibility as evidence of guilt is puzzling, I think. Well, but Mr. Vo did make a statement. I think you just said that right now in his declaration that he had on him a Marlboro cigarettes box that contained drugs. Doesn't this cast his credibility into serious doubt? Well, the – he concedes that he's transporting the controlled substance. There's no independent evidence to establish that he intended to sell it. He didn't – he didn't – he consistently testified he did not intend to sell the drugs. They were provided to him by – as a – basically, he was doing a favor for a friend in transporting this box of drugs. And – but I think standing alone, just the fact that he engaged in a bad act is not enough to find him not credible. There must be some independent reason to doubt what he's saying. And particularly in the absence of any other evidence, his testimony was credible. There was another flaw in the fact-finding. They found him evasive with respect to his background in chemistry. This is based on speculation and conjecture. The prosecutor was asking him whether there was ethics classes at UC Davis in their chemistry curriculum on why it's a bad idea to use that knowledge to make crack. This is simply speculation. Any person with five minutes and an internet connection can discover that this is not a complicated chemical process. It's the mixture of baking soda and cocaine. So that's classically the type of thing that cannot support an adverse credibility finding is speculation and conjecture. The – no reasonable finder of fact based on this record could have found Petitioner to be an admissible. But even if it – if there was substantial evidence, there is – he's harmed by an arbitrary and capricious agency regulation that should be invalidated under the Administrative Procedures Act. The agency's regulations allow it to parole an inadmissible returning refugee. So even a person like this man may be permitted to return, except in situations where there are compelling national security or public order concerns present. And the reason for this regulation is Article 28 of the Refugee Convention that requires states to provide this authorization in the absence of those compelling justifications for refusing to. But the regulation limits this relief only to aliens who are placed in exclusion proceedings and not to aliens placed in removal proceedings. The regulation was enacted in 1997 in response to IRA-IRA, but nothing in that statute requires that result. And so we assert that the – this is the type of agency action that doesn't involve the interpretation of a statute, but rather it's a creature solely of administrative practice that should be reversed under the reasoning of due length beholder. The two statutes at issue are 8 U.S. Code 1182, D-5A and B. One involves a refugee parole authority and one involves a general alien parole authority. The refugee parole authority has always required – both before IRA-IRA and now – has required the agency to look on a case-by-case basis at an individual alien's circumstances to prevent apparently the executive from using that as a general end run around the refugee determination process. All IRA-IRA did was move the general text of the general alien parole authority closer to the refugee parole authority by requiring a case-by-case analysis. So it's unclear where the agency got this distinction. Nothing in the text requires it. Nothing in the regulatory comments explain why it was setting this policy or felt it was required. And so under due length beholder, the Court found that where agencies take actions like this, well, where the immigration agencies do, that the policy, quote, must be tied, even if loosely, to the purposes of the immigration laws or the appropriate operation of the immigration system. A method for disfavoring deportable aliens that bears no relation to these matters that neither focuses on nor relates to an alien's fitness to remain in this country is arbitrary and capricious. And so we're asserting – in that case, the – we're asserting that it's very similar. The agency has identified no basis for making this distinction. There is no statute requiring that distinction be made. The policy hinges on the date a filing – a charging document is filed with the immigration court rather than on factors more germane to the alien's merit of living in the United States, such as the date of his arrival as a refugee or the nature of his conduct. The policy is untethered to the purposes of immigration laws. For example, the Refugee Act was intended to bring U.S. policy into compliance with the Refugee Convention and our obligations. And nothing suggests that Congress intended to comply with Article 28 only with respect to aliens who arrived before April 1st of 1997 and not afterwards. But the – there's also factual similarities in the nature of 212C relief, and this parole authority is somewhat similar. But also the court in Jitilang found arbitrary that relief will often turn on actions taken by the charging officer. For example, he may choose to characterize removability under a particular statute. There's different ways it could be formulated. Here, the date that the agency gets around to filing the charging document may make all the difference in the world. The – and this case provides a good example where it's happened many years after Congress assumed it would have occurred. The statute required the agency to inspect Petitioner for LPR status one year after his arrival in the early 1990s. It didn't do so until 2000. And had it done so, he would have been an LPR and be eligible for discretionary cancellation of removal for LPRs, despite the inadmissibility in this case. Or if he had been found excludable, he would be, by the terms of the regulation, eligible for this returning refugee parole. That's a very arbitrary result. The – turning to the issue of relief, the decision regarding asylum was not supported by substantial evidence. First, we're asserting that under Oye Niren v. Holder, a recent case, the res judicata applies, and that the prior finding of well-founded fear that was necessarily part of the refugee determination process bound the agency here. And that was a starting point for all additional fact-finding. And that was not how the agency approached the case. Also, the court in Oye Niren found that new evidence regarding material issues in the prior case is not an exception to collateral estoppel. So – but even leaving that aside, even if he doesn't enjoy that presumption, this is a case – he established eligibility on – in his own right. This is a past persecution case. The court should review this under Mendoza-Pablo and under Hernandez-Ortiz. Between the ages of approximately 7 and 14, this man witnessed numerous harms to his family, including the seizure of the family home, the seizure of all of their assets, all personal belongings, the detention and eight-month – arrest and eight-month detention of his father, the relocation of the family to a different economic zone where they were not able to support the children. The clear fear that this would engender in a child that age, as reflected by one failed escape attempt from Vietnam and one successful attempt where he was subjected to very difficult conditions, including having to bail water out during a journey of multiple days, you know, obviously fearing for his life. All of those circumstances, both the direct ones and indirect ones that were – resulted from the persecution of family, come in under Mendoza-Pablo, this Court's recent decision. The agency here basically said that he was handcuffed for a day and – handcuffed and held for a day. This grossly distorts his experience. And the record clearly reflects that these were imposed on him because of imputed political opinions, because of his family's assistance to the Americans during the war, to our own country. Nothing suggests that circumstances have changed. The State Department report said that returning refugees, returning Vietnamese are viewed as security threats. And monitored by the authorities. And his religious association with the UBCV sect of Buddhism only increases the objectively reasonable nature of his fear. The agency's decision – Can I ask you a question? Yes. Is there any evidence in the record that the lay members of Mr. Vo's church are being persecuted in Vietnam? Well, the evidence is related to the detention of two monks who clearly had a higher position perhaps. But there are numerous unauthorized organizations who have been persecuted. And one of – another organization, the International Religious Freedom Report, says that authorities had gone into a meeting and assaulted some of the members during a meeting and also had actually destroyed places of worship. So when the government is destroying the place of worship inherently, it's harming all of the members of the church, not just the persons who may be perceived as more in a leadership role. And that – we assert that that gives reason to believe he would be persecuted. But is that happening now? Well, the appropriate inquiry is what was happening at the time that the agency considered the evidence in the record. And we assert that it compels the conclusion that he had a well-founded fear based on the religious information. The agency made a very crucial error. It observed that the majority of Vietnamese people are Buddhist. That's not the issue because this particular sect of Buddhism is what's banned in Vietnam, the UBCV. And it's banned because of political reasons, not so much religious reasons. Its leadership is perceived as politically opposed to the Vietnamese government. And so – Two minutes left. Yeah. So I would reserve the balance of my time, please. Thank you. Thank you. May it please the Court. My name is Lance Jolly. I represent the Respondent, the Attorney General of the United States. Petitioner is a returning refugee who was placed in the removal proceedings based on a 2003 conviction for the transport of a controlled substance. The Court lacks jurisdiction over the petition for review under INA Section 242A2C as substantial evidence supports the agency's finding that there was reason to believe that Petitioner had been an illicit trafficker in a controlled substance. To – Is it correct that the decision is based in part on the police reports? The IJA first found that Vo was not credible and then proceeded to state that his decision was further substantiated on the police report. That is correct. Did he attempt to produce the police? Did who attempt to? Vo. Vo did – and there's nothing in the record to indicate that he – he might have objected on the grounds that he wanted to cross-examine, but I don't think there was anything in the record to show that he tried to compel the testimony of the police officer, if that was your question. He did have an opportunity to – the police report was submitted to evidence and then they had a later hearing about the reason to believe. And so he had an opportunity to – maybe not – since the police officer wasn't there, he was able to challenge the weight. He could have presented evidence going to the weight of the police report. And the police report, although it might not be absolute evidence that he was convicted of a drug conviction, it is – it goes to a reasonable to believe. It is admissible for that purpose. And having had the opportunity to challenge and he failed to demonstrate reliance on the report was fundamentally unfair. As I stated in my brief, credible hearsay or circumstantial evidence can be used to support probable cause, which has been generally equated with reason to believe. How is this case different from a hypothetical college student selling marijuana to his roommate? There's – you're referring to Rojas Garcia. The relationship between Beau and the person he was dealing with is not the same as doing it with your college roommate. The drug, marijuana, there's a lot of ethical – there's a distinction between marijuana and cocaine. While someone might think that sharing a joint with your college roommate does not constitute illicit trafficking, transporting cocaine, a person of ordinary intelligence would view that as illicit trafficking. If you were bringing cocaine to your roommate, it would be different. I would say cocaine has a different perception as far as ordinary – So the difference that you're pointing out is the difference between marijuana and cocaine. As well as I also point out the relationship. It's one thing when it's your roommate, you know, it's like your best friend or whatever, but when it's an associate who pays you money to do, you know, errands and gives you a cell phone and a pager and, you know, arranges for you to pick up the drugs to deliver them and that you'll pay for them, it's – Was there evidence that this other man gave him the cell phone and the pager and paid him money? Well, he claimed that the cell phone was not his. He claimed – the police reports stated that he was going to get paid. And I'm not sure what other evidence there is about the facts of your question, but – Is everyone involved in a drug transaction a drug trafficker? Not necessarily. The question is whether there's a reason to believe that the petitioner was a drug trafficker. Based on the police report, there was individually wrapped things of cocaine. There was indication that that was his business. And so there's a reason to believe. Had he had – I mean, Garces, if his friend – Garces is an 11th Circuit case that also deals with reason to believe. And this is distinguishable by that because the petitioner was the one who was found with the drugs. Petitioner's testimony was determined to be not credible. There's simply substantial evidence to support. Why? I mean, point to it. Tell me what it is. I'm trying to understand. Are you saying all of this, if it had been marijuana, would not have been supporting of a drug trafficker? I'm not saying that. When he's not credible as to whether he knew it was drugs or not, when it's reasonable to believe that he knew he was getting paid for it, when it seems that he was paid to transport cocaine, yes, I believe there's – And that's all in the police report, right? A lot – the fact that he was going to get paid for the delivery of the drugs is in the police report. And you say the police officer who made the report was present? No. The police officer was not present. I thought you said some police officer was there. I do not recall ever saying that. I said that there was nothing in the evidence to show that he tried to compel the officer. Did he defeat the officer? That was not raised below, and I'm not sure if he could have, to be honest. But I'm not sure of the failure to attempt to do so. But there's a process by which you can do it. I would imagine there's at least – he could have done something to request a subpoena. I'm asking you. In the rules, I'm unaware of. So you don't know? I don't know. All right. Moving on to – unless the Court has more questions on the reasons, we'll leave. Let's move on to the applicability of 8 CFR 1240.35. It does not apply for many reasons. First, the plain language of the regulation would mean that it does not apply to removal proceedings. The regulation in question was not compelled by Congress. The regulation predated ERIRA even in the form of 8 CFR 236.5e. And the regulation was not compelled by the convention. It states that it shall not expel a refugee lawfully in their territory. When you're on parole, like Petitioner was, you are not lawfully in the country. Stevic, an overstate case, stated that. And you'll find support in Mod v. Barber 357 U.S. 185, which was cited in Plyler v. Goe, which seems to distinguish on that question. And when being considered by the Senate, a treaty representative from the State Department stated that many, if not most of the grounds for deportation set forth are grounds of national security or public order. And simply, the regulation is not compelled by the convention. And it also seems to apply more to – Article 33 of the convention is more apt for exclusion proceedings or inadmissibility questions. And so with it not being compelled by Congress or the convention and by the plain language of the regulation, it should not apply. Nor is there any sort of equal protection violation or even a – it would be inappropriate for a retroactive application. He's not similarly situated with those whose proceedings occurred prior to the 1997. He had fair notice, no reasonable reliance on this reg, and there was no settled expectations that he would get that determination by the IJ. And exhaustion is still somewhat relevant, as it deprived the court of the benefit of the board's expertise as to whether regulation was substantially different than the convention. So it doesn't apply, and there's no reason that it should be enforced at this stage. As to asylum, there is no burden shifting. He was admitted as a refugee under Section 207, which has a lower burden of proof in which he can establish a well-founded fear of persecution by merely asserting such a fear and asserting a credible basis for concern about the possibility of persecution. That is not the same as the well-founded fear standard. The treatment he received did not compel finding a past persecution. It's based on his house was searched and a much later one-day detention where he was not harmed. And there's, as my brief points out, there's no well-founded fear of future persecution. Monitoring is not persecution. He's, as a former refugee, there's no evidence that he would have housing difficulty. And as he's not a monk or a leader of the Buddhist sect, he has shown no well-founded fear of persecution as a Buddhist. Unless the panel has, let's see. Let me see. There's no need to use up all of your time. Right. No, I've sat early before. But just to be clear, he raised an issue of informational fact-finding. It was not briefed prior. And so he has waived that. And the board's decision merely agreed with the immigration judge. And so it does not appear that there was de novo review. It was just looking at the facts to see whether the IG made a clear error. That's about all I have, unless you have anything else for me. Thank you, counsel. The statute requires that the government make its witnesses available for cross-examination. That's INA Section 240b, 4b. And at page 376 of the record, in his motion to reconsider, he requested the IJ order DHS to produce that witness. The IJ initially sustained the charge in writing, based solely on the police report without the opportunity for a hearing. And she did, in part, grant the motion to reconsider, but then she ignored that request to compel the production of a government witness. Sanappian v. Holder and Ibarra-Flores both required the judge to order DHS to produce the witness. There is a regulatory provision for a subpoena in immigration and removal proceedings. That's not something that an attorney of record can simply issue. It has to go through the judge. There's a showing of diligence and crucialness. An inability to produce the witness is necessary. There's two alternate ways to get the witness, and we pursued one here. The ---- Which one did you pursue? We pursued the request that the IJ order DHS to produce the witness, and that was at 376 of the record, Your Honor. That was just ignored by the agency. The ---- We assert Sanappian directly controls that the petitioner had the opportunity ---- should have had the opportunity to challenge DHS's evidence in this case and was deprived of that. The dictionary definition of trafficking requires a commercial purpose, and that is closely tied to whether a person of ordinary intelligence would be on appropriate notice to the constitutional vague issue in this case. The Attorney General cites incorrect provision of the Refugee Convention respecting expulsion. The correct provision was Article 28 that respecting the issuance of travel documents to allow somebody to leave and return. That's what we're asserting was relevant here. And we cite to quote the holder with respect to the exhaustion issue because we're asking the courts to invalidate that regulation. Thank you very much. Thank you, counsel. The case just argued will be submitted. Thank you.
judges: Ezra, Reinhardt, Murguia